Good morning. May it please the Court. Sam Henderson for the appellant. Ernesto Sam Medina. I'd like to reserve two minutes for about a little bit of my best to watch my clock. In this case, the Immigration Court violated Mr. Sam Medina's due process rights at his removal hearing by failing to meet its obligation to notify him of his eligibility for voluntary departure. And then the government prosecuted him for 1326 on the basis of that tainted removal. I want to start with the lynchpin, I think, of the District Court's decision and the government's arguments, which is the unsupported claim that the immigration judge did actually advise Mr. Sam Medina that he was eligible for voluntary departure. Despite the District Court and the government saying this, neither was able to point to any instance in the record of the immigration judge making such an advice. What we see instead is the immigration judge saying something to all the assembled people for proceedings that was mostly inaudible but that ended with, shall depart voluntarily. And then later, when he's speaking individually to Sam Medina, saying you're not eligible for any relief and that in any event I wouldn't grant you voluntary departure because of your theft offense. So at no point do we see the immigration judge saying anything like you're eligible for voluntary departure, you may be eligible for voluntary departure, let alone giving him an opportunity to develop the issue. This seems identical or worse than the situation with Melendez Castro, in which this court held that saying that a defendant might be eligible in one breath and in the next breath saying I'm not going to grant it anyway because of your criminal record. But the immigration judge went through with your client facts about his ties to Mexico, his ties to the United States, et cetera, right? He did. He asked those. And then he talks about, he takes the criminal offenses seriously and he talks about, I mean the transcript is bad, but he talks about eligibility and I am not going to grant voluntary departure. And he gives reasons, at least from the part of the transcript that we have. But after considering these facts, so why is that the same as the case you're citing? It doesn't seem to me the judge here said no matter what, I'm never going to give anybody with this kind of a conviction voluntary departure. I think the issue in Melendez Castro is not that he said I'm never going to give anyone. He's saying before giving any opportunity for Mr. Santa Medina to apply, he's saying I'm not going to grant it to you. And he never tells him he's eligible. He never gives him an opportunity to genuinely be heard on the issue. That's the due process issue. It's not enough under this court's case law, it's not enough to say, look, I've thought about it really carefully and I'm not going to give you voluntary departure. You actually have to give the person, tell them they're eligible, give them the opportunity to develop the issue, give them the opportunity to apply. And in terms of the questions he asked, those are really focused on cancellation of removal. I mean, he's asking about family ties, but he's not asking about other positive equities. Never ask him, you know, did you work while you were here? How much did you work? Why did you come here in the first place? And as far as what these positive equities would be, the statement from your investigator, Alice Babcock. Yes. And does it matter at all that that's hearsay? I don't believe so. I mean, this is a motion. So, I mean, the government's relying on hearsay all over the place, too, because they're relying on the A file. So, I mean, if it was something, if the district court was uncomfortable with it, it certainly could have heard evidence on that point. But, you know, evidence is often presented via hearsay in these circumstances, and I don't see an issue with it here. Maybe you could just shift to prejudice. Okay. In terms of prejudice, I guess the first point is the district court didn't make a proper prejudice finding. The district court doesn't evaluate plausibility. So, I mean, you could just remand it. If you agree with me about the advisal, you could just remand it to the district court, and it actually would make sense if you agree with me on the advisal, because the district court's D1 and D2 analysis is premised on the incorrect conclusion that he wasn't properly advised. So, there's a lot of work for the district court to do. Is there anything the district court would know that we don't know, though? I don't really understand why Melendez-Castro remanded on prejudice. I mean, I guess to have the people in front of you, if you're concerned about, for instance, the affidavit, you could ask people questions. The usual stuff, the district court does evaluate the person in front of them for credibility and that kind of thing. But it's evaluating what the I.J. would have known, right? It's evaluating what the I.J. would have elicited if he bothered to ask the questions or if he'd allowed Mr. Seyamadina to put on, you know, told him what he needed to prove and allowed him to put on his own evidence. Are you suggesting there's more on that front than what we have before us right now? I mean, we're here, we're stuck with the record we have. And just to talk about that briefly, we do see in this record much more than what the I.J. considered. There's the time he was here, which isn't huge, but it's something. The I.J. doesn't seem to have asked him anything about his work, and we see that he did do hard work as a day laborer, physically on his jobs, like gardening and roofing. We see these humanitarian needs. He comes to the U.S. as a teenager, apparently on his own, because a hurricane destroyed the town he grew up in and his family's home. He borrows money to come. When he gets here, he's sharing an apartment with a group of, like, nine other people. So he can send money home. So it's, you know, I recognize that these are not the hugest positives, but the negatives are also relatively minor. It's two misdemeanors. This court in Riavaca said that a similar record, I think that one was three misdemeanors, a misdemeanor burglary plus an obstructing police officer and giving false identification was minimal. Well, we're not bound by, or I'm just on Santa's sentence, but of course the majority there took, I guess, maybe a different view of the seriousness of dual identification. Is that something that, I don't know, why do you respond to that? I mean, I read in my 20-H.J. letter, there were, I believe, multiple DUIs in that case, if I'm remembering correctly at this point. And, you know, it's, I mean, it's, I guess it's multiple DUIs as opposed to this one. I'm trying to remember from the competing sets of cases that you and the government tried to piece together for us, your best couple of cases in terms of matching up. I think the best single case is this United States v. Montecampos, which is a district court decision that's printed in the ER. And that's a three-year residency starting at 17, continuous work as a farmhand, weighing a meth conviction to get voluntary departure. I think that's the single best. There are, you know, other cases saying, you know, DUI, I mean, granting voluntary departure, even in the event of a felony DUI, which I think usually implies that there were previous DUIs. So there are certainly cases granting it in light of DUIs. There are cases granting it in light of, I think, fewer, you know, less family ties and time here. There's the matter of Gamboa. There was a couple present only for a few months, got voluntary departure. In that case, the woman was pregnant, which is, you know, a humanitarian need. But it does kind of knock the idea that, oh, you need a long residency here. But do you agree that if we were to agree with you on this point, that we would have to decide the effect of Palomar-Santiago? I suppose. I mean, you'd have to decide some aspect of Palomar-Santiago. I don't think Palomar-Santiago changes anything here, again, because Palomar-Santiago is saying you've got to meet D-1 and D-2. And as we explained in the reply brief, we do meet D-1 and D-2. The case in Palomar-Santiago was like a true excusal where they're, you know, they're saying the merits were so bad here. So the current case, I don't know if it's always dealt with as automatic. I've seen language like excused and exempt. But often what they seem to be saying is that the appeal was unavailable, so you don't have to exhaust, which to me is consistent with D-2 and Palomar-Santiago. I'm sorry, D-1 and Palomar-Santiago. D-1 says you only have to exhaust remedies that are available. And if it's unavailable. Is it your position that if you satisfy the third prime in the circumstances here, that it's automatic that you've satisfied one and two? No, it's not. It's that my position is that D-1, D-2, and D-3 are all satisfied by the failure to notify. So it's not the satisfaction of the third prime that satisfies D-2 and D-1. It's that they all spring from the same common due process violation. So your view is just the failure to notify automatically meets D-1 and D-2 no matter what? I don't know that that's my claim. I mean, certainly it's my claim in this case. And I'm looking at the previous case law, which I don't think Palomar-Santiago does anything to undermine, which says that it's a due process violation not to notify about eligibility for relief and that you are deprived of your appeal if you are not properly notified. And that's not just our court or this court. It's also the Supreme Court, Mendoza-Lopez, saying that an appeal is unavailable where there has been a failure to notify. I'm out of time, but I will be sure to be back for a little while. Thank you. Good morning. Lindsay Alsop for the United States. May it please the Court. The defendant in this case cannot show that individuals with similar circumstances, meaning similar positive and negative equities, can meet their burdens to show that a grant of voluntary departure is plausible. Because he cannot do that by showing that a grant of voluntary departure would have been done, he cannot show that he was prejudiced. Long residence and family ties are typically the most important positive equities that are considered in immigration cases, and those positive equities are wholly absent in this case. At the time of his removal hearing, the defendant's mother and father were living in Mexico, as were his child. In addition, he had only spent three years in the United States, and during that very short time he had accumulated several convictions, including a DUI, which in the immigration context is considered incredibly serious, as well as a theft offense. And my friend mentions that the defendant was working while he was here in the United States, and that should be considered a positive equity. However, that theft was tied into the theft of roofing papers, so given the apparent connection between the job that he was doing as a roofer and the theft, the government would submit that this is not a positive equity at all. In addition, my friend references the so-called humanitarian need that this defendant needed in coming to the United States. However, I would again point to the fact that his entire family remained in Mexico, and therefore there are serious questions about whether or not there was humanitarian need for him to remain in the United States. And, Judge Bennett, you asked my friend if somehow because this information was submitted via a defense investigator rather than the defendant, whether or not this information should be weighed on one way or another. The government does not take a position to that point. However, it would note that the district court did weigh these so-called positive equities and still found that a grant of voluntary departure was not plausible in this case. Your opponent cited this district court case as his best case. What's your response there? I mean, I guess I don't remember the exact facts of that, but a federal district judge, I assume, looked at a somewhat similar, you know, positively negative set of equities and came out opposite to the position you're urging us to take. What's your response on that front? The government's response would be that our best case would be the Santos-Santos decision, which having the defendant having very similar positive inequities and negative equities to the defendant in this case, that this court should similarly affirm as it did in that case. And in Santos-Santos, one may argue that that defendant had even more positive equities than the defendant in this case. He had been residing in the United States for seven years, which is longer than three years. He also had nephews and family members that at least were residing in the United States. And Santos-Santos met those two key positive equities that are typically considered the most important, length of stay and family ties. However, this court or a panel of this court still found that a grant of voluntary departure was not plausible. I don't remember. Were there multiple DUIs in that case, as your opponent says? It appears from the record that there was only one DUI, but there were, however, several driving-related offenses. I do not believe from my review of that record that it was fledged out what those driving offenses were. But I would submit to this court that it's previously considered statistical evidence that immigration judges grant discretionary relief applications 50% of the time still to be insufficient to show plausibility for relief. So even my friend's best case would not necessarily be enough to push his client to meet that plausibility standard. So, counsel, if we were to disagree with you, say, on prong three, what is the government's position as to Palomar-Santiago, and whether if we were to find that there were a due process violation here because there were prejudice, does that automatically mean that the defendant meets one and two? Just a minute. I would submit that that is not the case. The Supreme Court was quite clear in Palomar-Santiago that it does not favor extra-statutory exceptions in the 1326 context. And my friend referenced the Mendoza-Lopez case. However, the government would submit that the facts in Mendoza-Lopez are really what is important in controlling the immigration judge. In that instance, failed to answer an individual's question regarding suspension of deportation, failed to correct an individual's clear misunderstanding of suspension of deportation, did not advise an individual by what date he needed to apply for suspension of deportation. There were accumulation of errors in Mendoza-Lopez that the Supreme Court found in that case amounted to a possible constitutional violation or due process violation because it deprived those individuals from having the awareness or ability to seek judicial review. However, in Palomar-Santiago, where the defendant in that case was told that he had the ability to appeal the decision and did not, the Supreme Court was quite clear one does not get to exhaust or one does not get to excuse his failure to exhaust just because there may have been a due process violation on the merits. I think I read Mendoza-Lopez quite differently from the way you do. I read the case as standing for a much broader proposition. That would be applicable here, which is you don't know until you're wrong because you think differently. I read it as saying if you are not adequately advised of the availability of a particular form of relief, then when the I.J. says to you, okay, I've denied, you know, you're not getting any relief from me, do you want to appeal? And the person says no, that that waiver of the right to take the administrative appeal, it can't be deemed knowing and intelligent because the person wasn't adequately told that there might be some basis to take an appeal. And so, therefore, as your opponent said, put aside what D-1 and D-2 say, Mendoza-Lopez, as a matter of due process, you can't be then deprived of an opportunity to collaterally tap the prior removal order. So Congress can't come along and pass, you know, 1326D and abrogate what Mendoza-Lopez said as a matter of due process. That's how I read it. So why is that wrong? Again, Judge Watford, I would just submit that the accumulation of errors in that case is what amounted to a due process violation. However, because the Supreme Court did not overturn that case, one must read Mendoza-Lopez and Palomar-Santiago together. And in Palomar-Santiago, the Supreme Court was quite clear that if an individual is advised of their opportunity to appeal and does not, their failure to appeal cannot be exhausted. Even if I'm not told that there's some, let's just say that the district, sorry, the IJ here just never even mentioned voluntary departure, just never said anything about it, and then just said, I'm denying you any form of relief, do you want to appeal? And the person says no. You're saying that that waiver of appeal is given effect in this posture? Given Palomar-Santiago, it seems as though the Supreme Court feels as though an individual told that they could appeal if that appeal would correct any sort of substantive errors on the immigration judge's part that they should appeal. Even though you have no idea that there's any error lurking there because the IJ, what we're taking is violated your due process rights in the removal proceeding by not advising you of the form of relief that was available. In theory, there are several possible issues or avenues that an individual could appeal a decision that they may never be aware of, but it seems as though from Palomar-Santiago, where an individual is advised that they can appeal and they choose not to, and an appeal could have corrected any so-called defects. But the underlying issue of what they might appeal is different. So in Palomar, there's a separate crime that may or may not have counted. It wasn't a question of discretionary relief, and we have case law that says even if it's discretionary relief, you have to be informed that that exists, and the failure to do that satisfies D-1 and D-2. I don't see how the cases that talk about that kind of violation satisfying D-1 and D-2 were addressed by Palomar at all. Again, we would submit that the Supreme Court was quite clear. All three prongs of 1326D must be satisfied in definition of his burden. However, on the facts in this case, the district court made a factual finding that the immigration judge advised the defendant in a group about possible forms of relief, including voluntary departure, and then later, one-on-one, provided him with the opportunity to apply by proactively taking the steps to go to a voluntary departure inquiry. And that is all that this circuit requires, that an individual be made aware of the possible forms of relief and be given the opportunity to apply. You just folded back and said that there was no due process violation, and I think you wisely began your argument by sleeping on that stuff, and you went straight to prejudice. Right. So, I mean, I think what Judge Bennett's question went to is, assuming we disagreed with you on the adequacy of the adviso, and it just sounds to me like you're just falling back on, well, the adviso was adequate. Okay. Well, if we agreed with you on that, the issue wouldn't arise. Let me ask you another question, counsel. I'm sorry, did you? That was just a comment. Okay. So, if I understand from the briefing, the government's position is similar, I think, to the first part of what Judge Watford said. That if we find there was no prejudice, we could choose to stop there. But if we found that there was prejudice in the government's view, we would then need to decide the effect of Palomar-Santiago on our previous case law, that three sort of automatically satisfies one and two, or whether you were right about the way we look at one and two. Is that a fair summary of the government's position? Yes, Your Honor, that would be a fair summary. If this court would choose to rely upon the excusal rationale, it would then need to consider Palomar-Santiago. But the government submits that the court needn't go that far in this case because there was no prejudice. Am I understanding correctly that you're treating the prejudice inquiry as an objective one, not one that asks what this particular I.J. would have done if he had more information? I believe the prejudice inquiry that a district court might do consists of balancing the positive equities and negative equities that were before the immigration judge at that point in time, and then also comparing them to defendants in other cases who had similar positive and negative equities. I think the question, though, is the inquiry focused on what the I.J. that was presiding over this particular removal proceeding would have done? Because let's say that the I.J. announced, you know, I don't give voluntary removal to anyone who has a theft conviction. Just as a categorical matter, that's just the rule in my court. Nobody who has a theft conviction gets a voluntary departure. I'm sorry if I said it differently. Do we just say, oh, well, my God, of course you couldn't have been prejudiced because we know that your particular I.J. would never have given you a voluntary departure, no matter how positive your equities were? Or instead, do we have this more objective inquiry where we just figure out what a hypothetical, reasonable I.J. would have done? I think that was my question. The government would submit that it would be more of the latter, an objective, reasonable immigration judge. All right, thank you very much for your argument. Let's go to you, Mr. Spock, for a moment, please. Thank you very much, Your Honor. My friend is correct about Santos Santos. It is one DUI. I went back and looked. But it's with multiple driving offenses. He has the DUI and then immediately goes back to driving without a license. So it's kind of a DUI with more of the same bad driving behavior as opposed to the DUI here. A couple things on the length of residence. The government said three years. I think that's based on a date in the A file. Our client has said that he came in 2001. So it would be more like five or six years, depending on when in 2001 versus when in 2000. Well, 2001 to 2007, so more like six years. That's an issue that the district court could resolve if it was set back there. The district court didn't find. The government said that the district court found relief not plausible. He didn't make that finding. He didn't look at plausibility. He looked at our argument about whether there had been a weighing of positive and negative factors and said that, in his estimation, both negative and positive factors had been weighed. He didn't get into plausibility. And I agree with the government in terms of the subjective versus objective. It can't be the subjective. Otherwise, Melendez-Castro wouldn't make any sense. And if the court has no further questions. Okay. All right. Thank you very much for your argument. In any case, such an argument is submitted.
judges: WATFORD, FRIEDLAND, BENNETT